AO 108 (Rev. 06/09) Application for a Warrant to Seize Property Subject to Forfeiture

FILED
UNITED STATES DISTRICT COURT
ALBUQUERQUE, NEW MEXICO

# UNITED STATES DISTRICT COURT
### for the
### District of New Mexico

AUG 2 2 2016

MATTHEW J. DYKMAN
CLERK

16mr597

| | |
|---|---|
| In the Matter of the Seizure of<br>*(Briefly describe the property to be seized)*<br>$10,520.00 United States currency | ) ) ) Case No. ) ) |

## APPLICATION FOR A WARRANT
## TO SEIZE PROPERTY SUBJECT TO FORFEITURE

I, a federal law enforcement officer or attorney for the government, request a seizure warrant and state under penalty of perjury that I have reason to believe that the following property in the ____Judicial____ District of

____New Mexico____ is subject to forfeiture to the United States of America under ____21____ U.S.C. §

____881(a)(6)____ *(describe the property)*:
$10,520.00 United States currency

The application is based on these facts:
See attached affidavit

☑ Continued on the attached sheet.

_____
*Applicant's signature*

SA Christopher Godier
_____
*Printed name and title*

Sworn to before me and signed in my presence.

Date:  ____08/22/2016____

_____
*Judge's signature*

City and state:  Albuquerque, NM

US Magistrate Judge Laura Fashing
_____
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF APPLICATION FOR SEIZURE WARRANT

I, Christopher Godier, Special Agent of the Drug Enforcement Administration (DEA), being duly sworn, state as follows:

### INTRODUCTION

1.      I am an investigative law enforcement officer of the United States within the meaning of section 2510(7) of Title 18, United States Code, as a Special Agent of the DEA.  As such, I am empowered to conduct investigations of and to make arrests for offenses enumerated in Title 21, United States Code.

2.      I have been a Special Agent since August 2003 and I am currently assigned to the Albuquerque District Office.   My experience as a Special Agent includes, but is not limited to, conducting surveillance, interviewing witnesses, debriefing defendants, writing affidavits for and executing search warrants, and working with undercover agents and informants.  I have received training in and have experience in the investigation of violations of the federal drug and money laundering laws, including the offenses listed below.  I have participated in the investigation of numerous drug trafficking conspiracies, including several Title III investigations.  As a result, I am familiar with matters including, but not limited to, the means and methods used by persons and drug trafficking organizations ("DTOs") to purchase, transport, store, and distribute drugs and to hide profits generated from those transactions.  I also have experience in analyzing and interpreting drug codes and cryptic dialogue used by drug traffickers.

### PROPERTY TO BE SEIZED

3.      I make this Affidavit in support of an application for the issuance of a Seizure Warrant for United States currency in the amount of $10,520.00.  The claimant of the United States currency is Eduardo Flores-Urbina.

### BACKGROUND

4.      I believe that, based upon the facts detailed in this Affidavit, probable cause exists that the item of property identified in paragraph 3 represents the proceeds of illegal drug trafficking activities and is therefore subject to forfeiture under Title 21, United States Code, Section 853(a)(1) and Title 21, United States Code, Section 881(a)(6).

5.      I have been involved in an ongoing investigation regarding illegal drugs being illegally transported into and distributed in and around Albuquerque, New Mexico.

6.      When I assert that a statement was made, I have either direct knowledge of the statement, or the information was provided by another law enforcement agent (who may have had either direct or hearsay knowledge of the statement), and I have either spoken to the agent or I have read and reviewed the agent's report.

7.      Since this Affidavit is being submitted for the limited purpose of securing a Seizure Warrant, I have not included each and every fact known to me concerning this investigation.  I

have set forth only the facts that I believe are necessary to establish the foundation for an order authorizing the seizure of the proceeds described in paragraph 3.

## FACTS AND CIRCUMSTANCES

8.        On February 2, 2016, Region III Narcotics Task Force Agents and I utilized a Region III Confidential Source, (CS) to purchase heroin from a heroin Drug Trafficking Organization (DTO) operating in the Albuquerque New Mexico area.  The leader of this DTO in the Albuquerque area, per a Region III CS is known to CS only as "Pato" LNU, and CS advised that CS has met Pato's brother, known to CS as Juan LNU  or Christian LNU.  Pato has been identified as Jonathan TORRES-Sacueta and his brother is believed to be Juan TORRES-Sacueta.  On this date, Region III agent Gabriel Trujillo and I met with CS and searched CS.  CS was not found to be in possession of contraband or money.  CS was provided with $200.00 United States currency to complete a heroin purchase as directed.  CS placed a recorded phone call to (505) 485-8030 and spoke to a male subject CS identified as Juan LNU also known as (aka) Christian LNU who is Pato's brother.  Agent Trujillo and I observed CS dial the number and press send on CS's phone.  CS placed CS's phone on speaker and Agent Trujillo and I were able to listen to the conversation.  CS advised Juan that CS was ready and was advised by Juan that it would be approximately half an hour.  CS hung up the phone and CS then advised that Juan had called CS the previous night and that CS and Juan had agreed on a "quarter," which CS advised was a quarter of an ounce or six grams of heroin.  Approximately 30 minutes later, CS contacted the driver of a silver Pontiac Grand Prix bearing New Mexico temporary license 16T-023492, which is registered to Eduardo FLORES at 3512 Eastern Ave. SW, Albuquerque, New Mexico 87106.   CS has identified FLORES from a photo as the "Mechanic" and advised that he moves drug proceeds for this organization.  CS got into the silver Pontiac and spoke to the driver for a few minutes before CS exited the vehicle and the driver of the Pontiac departed the area.  Constant surveillance was maintained on CS and the Pontiac during this time.  CS stated that the driver of the silver Pontiac worked for Pato and Juan delivering heroin for the DTO.   Agent Trujillo and I met with the CS immediately following this transaction and the CS turned over the suspected heroin. Agent Trujillo searched the CS and no contraband or money was located.  Later on this same date, Agent Trujillo conducted a standard chemical test on the heroin and received positive results for the presence of heroin.  Agent Trujillo weighed the heroin and obtained an approximate weight of 7 gross grams.  Surveillance of the silver Pontiac was maintained following the meeting with the CS for approximately two hours.  During this time, the driver of this vehicle was observed meeting with five different individuals.  Each meeting lasted only a few minutes and the driver would then depart and travel to the next meet location.  I also observed that the driver of this Pontiac appeared to be on the phone continuously during the time he was driving to each meet location and I believe the driver was receiving directions to the location of each heroin delivery.  I know based on my training and experience that this type of activity is consistent with the distribution of heroin or other illegal drugs.

9.        On February 10, 2016, Region III Agents Gabriel Trujillo and Thomas Maes met with CS and searched CS.  CS was not found to be in possession of contraband or money.  CS was provided with $750.00 United States currency to complete a heroin purchase as directed.  CS placed a recorded phone call to (505) 485-8030 and spoke to a male subject CS identified as Juan

LNU aka Christian LNU. Agent Trujillo and Agent Maes observed CS dial the number and press send on CS's phone. CS placed CS's phone on speaker and Agent Trujillo and Agent Maes were able to listen to the conversation. CS advised Juan that CS was ready and was advised by Juan that it would be approximately 20 minutes. CS hung up the phone and CS then advised that Juan had called CS earlier and that CS and Juan had agreed that CS would purchase one ounce of heroin. Approximately 20 minutes later, a black Pontiac G6 arrived bearing New Mexico temporary tag 16-T041612, which is registered to Julio CESAR at 9301 Volcano Road NW, Albuquerque, New Mexico, space 84. I am aware that 9301 Volcano Road, trailer 84 is the residence of Jonathan TORRES-Sacueta aka Pato, and Nora ALONSO who is believed to be the wife or girlfriend of TORRES-Sacueta. CS contacted the driver of the black Pontiac G6 at the driver's side window meeting with the driver briefly, then walking away, simultaneously the driver of the Pontiac drove away. Constant surveillance was maintained on CS and the Pontiac during this time. Agent Trujillo and Agent Maes approached CS who relinquished a plastic baggie containing four aluminum balls and one black taped ball containing brown heroin. CS was searched again for any and all contraband, narcotics and US Currency, to which none was found. Agent Maes conducted a standard chemical test on the heroin and received positive results for the presence of heroin. Agent Maes weighed the heroin and obtained an approximate weight of 27.6 gross grams. Upon departure of the black Pontiac, members of the Region III Narcotics Task Force maintained surveillance on the driver/vehicle. Surveillance revealed the driver meet with eleven different people throughout the evening of February 10, 2016. Surveillance continued and at approximately 9:00 p.m. the vehicle was observed arriving at the 7520 Forsythe Road SW, Albuquerque, NM. The vehicle then departed and travelled to a Chevron gas station located at Rio Grande and Floral St. The driver was observed meeting with the driver of a Maroon Toyota Camry bearing Colorado temporary tag 061748N, before returning to the Subject Residence and parking in the garage of the residence. Surveillance of the 7520 Forsythe Road SW was maintained for approximately 15 minutes and then terminated. Agents believed that the driver of the black Pontiac G6 resides at 7520 Forsythe Road SW.

10.     On February 11, 2016, Region III Agents established surveillance at 7520 Forsythe Road SW, Albuquerque, NM. 87121, at approximately 6:00 a.m. Agent Maes observed the maroon Toyota Camry bearing Colorado temporary tag 061748N, back out of the garage at approximately 7:20 a.m. and depart. Agent Maes observed that the driver of the vehicle was a Hispanic male and the passenger was the Hispanic male that had been the driver of the black Pontiac G6 on February 10, 2016. Surveillance of these two men in this vehicle was lost as the vehicle departed the neighborhood. At approximately 8:00 a.m., the maroon Toyota returned and both men were in the vehicle. Agent Maes observed the vehicle park in the garage of the residence and the garage door closed. At approximately 11:53 a.m., Agent Maes observed the maroon Toyota back out of the garage occupied by the original driver only. Surveillance of the vehicle was maintained and the driver was observed going to Wells Fargo bank located at 1406 Bridge SW, and going into the bank. A short time later, the driver was observed departing and travelling to the Wells Fargo bank located at 156 Juan Tabo Blvd NE, and going into the bank. The Camry was followed to 201 Wilshire Dr. SW, Albuquerque, New Mexico and surveillance was terminated at 4:00 p.m. Agents noted that one of the locations the black Pontiac G6 travelled to on February 10 was this house located at 201 Wilshire Dr. SW.

11.     On February 19, 2016, United States Magistrate Judge Steven Yarbrough signed a search warrant for 7520 Forsythe Road SW, Albuquerque, NM. 87121.

12.     On March 2, 2016, DEA agents and Region III agents executed the warrant at 7520 Forsythe Road SW.  Agents arrested Octavio Lopez-Ramirez and Francisco Rodriguez-Moreno subsequent to the seizure of approximately 1036 gross grams of heroin contained in the residence and 514 gross grams of heroin seized from the vehicle utilized by Rodriguez-Moreno at the time of his arrest.  Also $8,036.00 United States currency was seized from the residence.

13.     On March 10, 2016, SA Matthew Zastrow, from the Denver DEA division office observed a maroon Toyota bearing New Mexico license plate NRZ-752 at 2653 Moore Drive C, Lakewood Colorado, which is a location known to be utilized by this DTO.  New Mexico license plate NRZ-752 is registered to Eduardo Flores-Urbina at 3512 Easter SW, #B, Albuquerque, NM. I believe that the address is incorrect on the registration and should in fact be 3512 Eastern SE, which is Eduardo Flores-Urbina's current address.

14.     On July 20, 2016, a Source of Information (SOI) provided information on this DTO. SOI explained SOI and a second male subject were distributing heroin for Rafael Salazar-Anaya aka Jonathan TORRES-Saceuta aka Pato and Erik Salazar-Anaya aka Juan TORRES-Sacueta aka Juan.  SOI advised that Rafael Salazar-Anaya and Erik Salazar-Anaya are Pato and Juan's real names.  SOI identified a photograph of Eduardo Flores-Urbina and SOI identified Flores-Urbina as the "mechanic" and stated that Flores-Urbina obtained vehicles for Rafael and Erik Salazar-Anaya and that Flores-Urbina was also involved in heroin trafficking activities for the Rafael and Erik Salazar-Anaya.  SOI stated that Flores-Urbina would collect money from the sale of heroin for Rafael and Erik.  SOI advised that Flores-Urbina traveled from Albuquerque to Denver in a Maroon Toyota and transported money to Denver and brought back the heroin that was seized on March 2, 2016.  SOI advised that the maroon Toyota they drove to Denver remained in Denver, and the heroin was transported to Albuquerque utilizing a white pickup truck that was seized by DEA on this same date.

15.     On August 18, 2016, at approximately 10:04 a.m. Region III agent Gabriel Trujillo was traveling north bound on interstate 25, near La Bajada hill when he observed a purple Jeep bearing New Mexico license plate NXR-853, which Agent Trujillo confirmed was a vehicle known to be utilized by Flores-Urbina. Agent Trujillo observed that the vehicle was occupied by two Hispanic males.  Agents have observed this vehicle at Flores-Urbina's residence at 3512 Eastern SE, on several occasions during August of 2016. Agent Trujillo followed the vehicle north bound through Santa Fe and at mile post 319, south of Las Vegas New Mexico Region III Sgt. Wayne Shelton initiated a stop of the purple Jeep as it exited the highway at exit 320.  Sgt. Shelton contacted the driver, Eduardo Flores-Urbina and the passenger Jaime Oswaldo Vasquez-Flores. Flores-Urbina advised the purple jeep belonged to him and that he had recently purchased the vehicle.  Flores-Urbina advised that he and Vasquez-Flores were travelling to Denver to purchase a vehicle, and that the money belonged to him.  Vasquez-Flores advised that he and Flores-Urbina were travelling to Denver for vacation, and that the money belonged to Flores-Urbina and himself. Flores-Urbina gave both verbal and written consent for the search of the Jeep and advised that ten thousand dollars was in the vehicle.  Agents located the $10,520.00 concealed in a red Milwaukee

4

tool bag under the back seat of the vehicle. I requested that Sgt. Shelton seize this money as suspected drug proceeds.

16. On August 19, 2016, I took custody of the money. I opened the sealed New Mexico State Police evidence bag and DEA TFO Jason Franklin utilized his assigned canine unit, which alerted to the odor of an illegal controlled substance on the money.  I then sealed the money in a DEA evidence bag and transported the money for official count and transfer to the USMS on this same date. During the official count I observed that the money was bundled with rubber bands. Each bundle had a post-it note, with a dollar amount written on it, attached to the bundle. Based on my training and experience I have observed drug proceeds packaged in this manner on numerous occasions.

17.    Based on my training and experience I know that $10,520.00 in bulk currency found concealed in Flores-Urbina's vehicle is consistent with my belief that this money is the proceeds from distributing heroin.

18.    Based on the above facts and circumstances, there is probable cause to believe, and I do believe, that the aforementioned property of Eduardo Flores-Urbina, represents proceeds of illegal drug trafficking as described in Title 21, United States Code. As such, the aforementioned property of Eduardo Flores-Urbina is seizable and forfeitable to the United States Government pursuant to Title 21, United States Code, Section 881(a)(6) or Title 21 United States Code Section 853(a)(1).

I, therefore, request that the Court issue a Seizure Warrant as authorized under Title 21 United States Code, Section 853 (f) because:

a.    There is probable cause to believe that the property to be seized would, in the event of conviction, be subject to forfeiture, and

b.    An order under Title 21, United States Code, Section 853(e) may not be sufficient to assure the availability of the property for forfeiture.

I swear that this information is true and correct to the best of my knowledge.


_____

Christopher Godier
Special Agent
Drug Enforcement Administration



Subscribed to and sworn to
before me, this 22nd of August, 2016

Laura Fashing
United States Magistrate Judge